IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE RENFROW, | ) | CASE NO.  3:24-CV-00946-JJH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | JUDGE JEFFREY J. HELMICK |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | MAGISTRATE JUDGE |
| ADMINISTRATION, | ) | JONATHAN D. GREENBERG |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |

Plaintiff, Michelle Renfrow ("Plaintiff" or "Renfrow"), challenges the final decision of Defendant, Martin O'Malley,[1] Commissioner of Social Security ("Commissioner"), denying her applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be VACATED AND REMANDED for further proceedings consistent with this opinion.

## I.  PROCEDURAL HISTORY

In September 2021, Renfrow filed an application for POD, DIB, and SSI, alleging a disability onset date of September 30, 2019, and claiming she was disabled due to bipolar disorder, irritable bowel

---

[1] On December 20, 2023, Martin O'Malley became the Commissioner of Social Security.

syndrome, acid reflux disease, fibromyalgia, chronic kidney stones, lumbar degenerative disc disease, chronic headaches, and seizure disorder.  (Transcript ("Tr.") 22, 69.)  The applications were denied initially and upon reconsideration, and Renfrow requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 22.)

On April 28, 2023, an ALJ held a hearing, during which Renfrow, represented by counsel, and an impartial vocational expert ("VE") testified.  (*Id.*)  On May 16, 2023, the ALJ issued a written decision finding Renfrow was not disabled.  (*Id.* at 22-40.)  The ALJ's decision became final on February 16, 2024, when the Appeals Council declined further review.  (*Id.* at 6-11.)

On May 31, 2024, Renfrow filed her Complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 8, 10-11.) Renfrow asserts the following assignment of error:

> (1) The Commissioner erred as a matter of law by failing to properly account for the Plaintiff's social limitations in the RFC.

(Doc. No. 8.)

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Renfrow was born in October 1980 and was 42 years-old at the time of her administrative hearing (Tr. 22, 39), making her a "younger" person under Social Security regulations.  *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).  She has a limited education.  (Tr. 39.)  She has past relevant work as a leasing manager, cashier, and fast-food worker.  (*Id.* at 38.)

**B.      Relevant Medical Evidence[2]**

On April 15, 2022, Renfrow attended a consultative examination with John Reece, Psy.D. (Tr. 882-89). Renfrow reported she was disabled due to multiple issues, including bipolar disorder, fibromyalgia, and kidney stones. (*Id.* at 882.) She completed eighth grade before quitting school at 16 years old. (*Id.* at 883.) She reported a history of special education classes for learning and behavioral problems. (*Id.*) She told Dr. Reece she got along with other students for the most part, although she was "teased, picked on, and bullied" by some students, and she got along with her teachers. (*Id.*) She denied problems with authority figures. (*Id.* at 884.) She used marijuana daily but denied it was a problem. (*Id.*) She told Dr. Reece she had attempted suicide twice. (*Id.*) She reported taking Buspar as prescribed. (*Id.*) She denied any admissions to a psychiatric hospital. (*Id.*) Renfrow endorsed a variable appetite, sleep difficulties, occasional crying spells, depression, suicidal thoughts, feelings of guilt, hopelessness, worthlessness, and helplessness, lack of energy, occasional mood swings, and a "'distraught' mood.'" (*Id.* at 884-85.) She reported anxiety and nervousness when interacting with others, in public, and around loud people. (*Id.* at 885.) She also endorsed periods of increased anxiousness with associated lightheadedness, nausea, and sweating. (*Id.*) Renfrow told Dr. Reece she got irritated or angry easily when tasks frustrated her. (*Id.*) She reported being fired four to five times for attendance issues and a conflict with a customer. (*Id.*) She denied any problems with supervisors but endorsed arguments with coworkers. (*Id.*) She spent her days caring for herself and her

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs. As Renfrow only challenges the ALJ's mental residual functional capacity findings, the Court limits its discussion of the evidence to Renfrow's mental impairments. In addition, Renfrow failed to discuss any evidence in the Facts section of her brief as required in the Court's Initial Order. (Doc. No. 6.)

children, doing household chores, preparing food, running errands, and attending appointments. (*Id.* at 886.) She socialized regularly with her son in-person and occasionally with her father by telephone. (*Id.*)

On examination, Dr. Reece found a neat and clean appearance, good eye contact, normal to "mildly exaggerated" facial expressions and gestures, "very mild agitation," fidgeting, "an above average amount of speech," well-organized to tangential thought process, constricted affect, a "mildly anxious" mood, and full orientation. (*Id.*) Dr. Reece further found fair short-term memory, good to fair working memory, satisfactory concentration and persistence, and "satisfactory to slightly slowed" pace. (*Id.* at 886-87.) Renfrow's diagnoses included unspecified mood disorder, unspecified trauma and stressor-related disorder, and cannabis use disorder. (*Id.* at 887-88.) Dr. Reece opined Renfrow had no problem following directions or concentrating during the exam. (*Id.* at 888.) Dr. Reece noted Renfrow relayed a history of "disrupted" interpersonal relationships and past arguments with co-workers in the workplace, although she denied any problems with supervisors. (*Id.*)

**C.     State Agency Reports**

On May 4, 2022, David Biscardi, Ph.D., reviewed the file and opined that Renfrow had moderate limitations in her ability to understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage herself. (*Id.* at 74-75, 88-89.) Dr. Biscardi determined Renfrow had a moderate limitation in her ability to accept instructions and respond appropriately to criticism from supervisors. (*Id.* at 79, 93.) Dr. Biscardi further opined:

> Clmt retains the capacity to understand, remember, carry out and sustain performance of 1-3 step tasks (but would become overwhelmed if the procedures were more complicated), complete a normal workday, interact briefly/superficially with coworkers/supervisors with limited public contact, and adapt to changes/stressors associated with simple routine competitive work activities.

(*Id.*)

4

On December 26, 2022, Kristen Haskins, Psy.D., on reconsideration, affirmed Dr. Biscardi's findings. (*Id.* at 101, 104-105, 113, 116-18.) Dr. Haskins opined Renfrow was limited to one to three step tasks. (*Id.* at 104, 116.) Dr. Haskins further opined Renfrow could "complete simple tasks in a setting that does not have fast pace demand and where [she] can work away from the distractions of others." (*Id.* at 105, 117.) Renfrow could "superficially and occasionally interact in the work setting." (*Id.*) Dr. Haskins further opined:

> Claimant can adjust to minor changes in the work setting and still complete an ordinary routine consistently on an independent basis. Major changes will need to be introduced in advance and then gradually phased in to allow the claimant time to adjust to the new expectations.

(*Id.*)

**D.    Hearing Testimony**

During the April 18, 2023 hearing, Renfrow testified to the following:

- She lives with her seven-year-old child. (*Id.* at 49.) She holds a driver's license, although she has problems driving at night because of her eyes. (*Id.* at 50.)

- Her kidney stones and bipolar depression prevent her from working full-time. (*Id.* at 52.)

- She can cook most days. (*Id.* at 56.) There are some chores around the house she cannot do, and her child tries to help with those. (*Id.*) She enjoys painting and art. (*Id.*)

The VE testified Renfrow had past work as a leasing manager, cashier, and fast-food worker. (*Id.* at 62.) The ALJ then posed the following hypothetical question:

> First hypothetical, assume that a hypothetical individual of the claimant's age, education, and work experience has the residual functional capacity for work at the light exertional level, postural limitations of no climbing ladders, ropes, or scaffolds, frequent climbing of ramps and stairs, occasional stooping, frequent kneeling, crouching, and crawling, frequent use of the bilateral lower extremities for operation of foot controls, environmental limitations to avoid all exposure to moving, mechanical parts, commercial driving, and high exposed places, additional environmental limitations to avoid more than occasional concentrated exposure to vibrations, communication limitation of no jobs in loud work environments such as heavy traffic noise levels. The hypothetical individual can understand, remember, and carry out simple instructions for

5

work not requiring a specific production rate, such as assembly line work.  No work requiring hourly quotas, capable of using judgment to make simple work-related decisions with occasional changes in a routine work setting, capable of occasional interactions with supervisors, occasional superficial interactions with the general public and coworkers. Superficial defined as able to be in proximity of others, able to exchange greetings, and able to engage in discussions that do not require persuasion or involve tandem tasks that extend beyond the 30-day training period. Ms. Ligon, would a hypothetical individual with that first residual functional capacity be able to perform any of the identified past relevant work?

(*Id.* at 62-63.)

The VE testified the hypothetical individual would not be able to perform Renfrow's past work as a leasing manager, cashier, and fast-food worker.  (*Id.* at 63-64.)  The VE further testified the hypothetical individual would be able to perform other representative jobs in the economy, such as merchandise marker, routing clerk, and mail clerk.  (*Id.* at 64-65.)

### III.   STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

A claimant is entitled to a POD only if the claimant: (1) had a disability; (2) was insured when the claimant became disabled; and (3) filed while the claimant was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

A disabled claimant may also be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100, 416.1201.

6

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4)*, *416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that they are not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that they suffer from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c), 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).   Fourth, if the claimant's impairment or combination of impairments does not prevent the claimant from doing their past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent the claimant from doing their past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g).

Here, Renfrow was insured on the alleged disability onset date, September 30, 2019, and remained insured through December 31, 2022, the date last insured ("DLI").  (Tr. 22.) Therefore, in order to be entitled to POD and DIB, Renfrow must establish a continuous twelve-month period of disability commencing between these dates.  Any discontinuity in the twelve-month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2.      The claimant has not engaged in substantial gainful activity since September 30, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.      The claimant has the following severe impairments: chronic kidney disease / chronic kidney stones, status post surgeries /nephrolithiasis of left kidney; unspecified mood / bipolar disorder; disorders of skeletal spine / degenerative disc disease, lumbar spine; substance dependence disorder (alcohol, cocaine, and cannabis); unspecified trauma and stressor related disorder; tension type headaches, not intractable / migraines without aura, and without status migrainosus, not intractable; and fibromyalgia (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: Postural limitations of no climbing of ladders, ropes, or scaffolds. Frequent climbing of ramps and stairs. Occasional stooping. Frequent kneeling, crouching, and crawling. Frequent use of the bilateral lower extremities for operation of foot controls. Environmental limitations to avoid all exposure to moving mechanical parts, commercial driving, and high exposed places. Additional environmental limitations to avoid more than occasional, concentrated exposure to vibrations. Communication limitation of no jobs in loud work environments, such as heavy traffic noise levels. Can understand, remember, and carry out simple instructions for work not requiring a specific production rate, such as assembly line work, nor work requiring hourly quotas. Capable of using judgement to make simple work-related decisions, with occasional changes in a routine work setting. Capable of occasional interaction with supervisors. Occasional, superficial interactions with the general public and coworkers. Superficial defined as, able to be in proximity of others, able to exchange greetings, and able to engage in discussions that do not require persuasion, or involve tandem tasks that extend beyond a 30-day training period.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on October **, 1980, and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has a limited education (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from September 30, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 24-40.)

## V.  STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734,

10

2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  ANALYSIS

In her sole assignment of error, Renfrow argues the RFC contains two errors: (1) it fails to account for "'superficial contact' with supervisors" and (2) it fails to account for "'brief contact with supervisors." (Doc. No. 8 at 9.)  Renfrow asserts that the state agency reviewing psychologists agreed on the "*qualitative* aspects of the social limitations," and despite the ALJ finding those opinions persuasive, the RFC limited Renfrow to "'*occasional* interaction with supervisors'" without incorporating "a limitation to '*superficial* interaction' with supervisors." (*Id.*) (emphasis in original).  In addition, Renfrow argues that "brief contact" is not coterminous with "occasional contact," and therefore the ALJ's limitation to "occasional" interaction does not accommodate a limitation that interactions be "'brief' or short in duration." (*Id.* at 12.)  Renfrow acknowledges the ALJ was not required to adopt a medical opinion verbatim; however, "where, as here, the ALJ found a particular opinion to be persuasive and states it is consistent with the record, he must incorporate the opined limitations or provide an explanation for declining to do so." (*Id.* at 11) (citation omitted).  Therefore, Renfrow argues this case must be remanded as the ALJ's failure to provide such an explanation prevents the Court from "conducting meaningful review to determine whether substantial evidence supports [the ALJ's] decision." (*Id.*) (citations omitted).  Renfrow asserts the ALJ further erred in failing to "reconcile" the state agency reviewing psychologists' "inconsistent opinions" regarding brief as opposed to occasional contact, and by failing to incorporate a limitation to either "'superficial contact with supervisors', or 'brief contact with supervisors'," into the hypothetical questions posed to the VE. (*Id.* at 13.)

The Commissioner responds that Sixth Circuit precedent holds that a limitation to occasional interaction in the RFC "accounts for an opined limitation to superficial interaction." (Doc. No. 10 at 1)

11

(citing *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267 (6th Cir. 2018)).  The Commissioner argues that "courts in this district, applying *Reeves*, have found that an RFC limitation to occasional interaction accounts for an opined limitation to superficial interaction, declining to follow the Southern District of Ohio's approach that distinguishes between the terms." (*Id.* at 6) (citations omitted).  The Commissioner maintains that this Court has also found that a limitation to "brief" interaction is addressed by an RFC limitation to occasional interaction," rejecting authority from the Southern District of Ohio finding to the contrary. (*Id.* at 7) (citations omitted).  In addition, only one state reviewing psychologist opined that Renfrow was limited to brief interaction with supervisors, and Renfrow fails to show that the RFC lacks the support of substantial evidence. (*Id.* at 1.)  The Commissioner asserts that "on multiple occasions, Plaintiff denied having any limitations in interacting with supervisors." (*Id.* at 1-2.)  Therefore, under Sixth Circuit precedent, the Court should affirm the ALJ's decision. (*Id.* at 2.)

Renfrow replies that, contrary to the Commissioner's argument, even after *Reeves*, courts in this district have found that a limitation to occasional interaction does not account for a limitation to superficial interaction. (Doc. No. 11 at 2) (citations omitted).  In addition, Renfrow argues her case is distinguishable from the facts in this district's decisions in *Burley v. Commissioner of Social Security*, 2024 WL 1297554, at *6 (N.D. Ohio Mar. 27, 2024), and *James v. Commissioner of Social Security*, 2023 WL 417932, at *2 (N.D. Ohio June 5, 2023). (Doc. No. 11 at 3.)  Renfrow asserts that *Reeves* "was a case-specific outcome" and did not change the law. (*Id.* at 5.)  In summation, Renfrow argues:

> [T]he ALJ erred by (1) failing to account for a limitation to superficial contact in the RFC, (2) by failing to account for any *qualitative* limitations that would have encompassed a limitation to superficial contact (for example, a limitation to "no teamwork or tandem tasks"), and (3) by failing to provide a meaningful explanation (or any explanation at all, for that matter) as to why the "superficial" contact limitation was not accounted for in the RFC.

(*Id.*)

The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 404.1545(a). The ALJ bears the responsibility for assessing a claimant's RFC based on all the relevant evidence, 20 C.F.R. § 404.1546(c), and must consider all of a claimant's medically determinable impairments, both individually and in combination. *See* SSR 96–8p, 1996 WL 374184 (SSA July 2, 1996).

The ALJ is obligated to consider the record as a whole. *Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985). "In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer*, 774 F. Supp. 2d at 880 (citing *Bryan v. Comm'r of Soc. Sec.*, 383 Fed. Appx. 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute [...] contradictory, objective medical evidence' presented to him.")). "'[W]here the opinion of a medical source contradicts his RFC finding, an ALJ must explain why he did not include its limitations in his determination of a claimant's RFC.'" *Davidson v. Comm'r of Soc. Sec.*, No. 3:16CV2794, 2018 WL 1453472, at *2 (N.D. Ohio Mar. 23, 2018) (quoting *Moscorelli v. Colvin*, No. 1:15-cv-1509, 2016 WL 4486851, at *3 (N.D. Ohio Aug. 26, 2016)) (citing SSR 96-8p, 1996 WL 374184, at *7); *Cooper v. Comm'r of Soc. Sec.*, No. 2:18-cv-67, 2018 WL 6287996, at *5 (S.D. Ohio Dec. 3, 2018) ("[W]here, as here, the ALJ assigns significant weight to a particular opinion and states it is consistent with the record, he must incorporate the opined limitations or provide an explanation for declining to do so.") (citations omitted), *report and recommendation adopted by* 2019 WL 95496 (S.D. Ohio Jan. 3, 2019). *See also* SSR 96–8p at *7, 1996 WL 374184 (SSA July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). While the RFC is for the ALJ to determine,

it is well established that the claimant bears the burden of establishing the impairments that determine his RFC.  *See Her*, 203 F.3d at 391.

An ALJ must provide a discussion at each step "in a manner that permits meaningful review of the decision."  *Boose v. Comm'r of Soc. Sec.*, No. 3:16cv2368, 2017 WL 3405700, at *7 (N.D. Ohio June 30, 2017) (quoting *Snyder v. Comm'r of Soc. Sec.*, No. 5:13cv2360, 2014 WL 6687227, at *10 (N.D. Ohio Nov. 26, 2014).  This discussion must "build an accurate and logical bridge between the evidence" and the ALJ's conclusion.  *Snyder*, 2014 WL 6687227, at *10 (quoting *Woodall v. Colvin*, No. 5:12 CV 1818, 2013 WL 4710516, at *10 (N.D. Ohio Aug. 29, 2013)).

The ALJ's analysis included the following discussion of the state agency reviewing psychologists' opinions:

> On May 4, 2022, David Biscardi, Ph.D., from the State agency disability determinations component, reviewed the claimant's medical evidence of record and opined that her medically determinable mental impairments would result in only moderate limitations in understanding, remembering, and applying information; moderate limitations in interacting with others; moderate limitations in concentration, persistence, and pace; and moderate limitations in the ability to adapt or manage herself. However, Dr. Biscardi stated that the claimant retains the capacity to understand, remember, carry out and sustain performance of 1-3 step tasks (but would become overwhelmed if the procedures were more complicated), complete a normal workday, interact **briefly/superficially with coworkers/supervisors with limited public contact**, and adapt to changes/stressors associated with simple routine competitive work activities. (Ex. 1A and 3A). Then, on December 26, 2022, Kristen Haskins, Psy.D., from the State agency disability determinations component, reviewed the claimant's medical evidence of record and concurred with the opinion of Dr. Biscardi, noting that the claimant would be limited to 1-3 step tasks, in a setting that does not have fast pace demand and where she can work away from the distractions of others, **only occasionally and superficially interact in the work setting**, and where major changes can be introduced gradually to allow her time to adjust to new expectations. (Ex. 5A and 7A).
>
> **The undersigned finds the opinions of the State agency consultative physicians and psychologists to be generally persuasive**. In making these findings, the undersigned notes that the State agency consultative physicians and psychologists had the opportunity to review the medical record through December 2022 prior to offering their respective opinions. Additionally, the

> undersigned notes that the opinions of the State agency consultative physicians are consistent with and supported by medical records from Executive Urology, which show that the claimant has a history of kidney stones and flank pains, which would limit her to a light exertional level. (Ex. 5F, p. 30-31). The opinions of the State agency consultative physicians are also consistent with treatment notes from Advanced Neurologic Associates, which show that the claimant has a history of migraine headaches, which would warrant limitations in exposure to vibrations and noises. (Ex. 11F, p. 2-3). Furthermore, the undersigned notes that the opinions of the State agency consultative physicians are consistent with and supported by records from the Fisher Titus Medical Center, which show that she has been hospitalized with flank pains related to cystoscopy and pyelonephritis. (Ex. 5F, p. 51 and 141; Ex. 9F, p. 1-2). **In terms of the opinions of the State agency consultative psychologists, the undersigned notes that their opinions are consistent with records from the Norther [sic] Ohio Family Practice**, which show that she has been assessed with bipolar disorder, anxiety, **and has difficulties with** concentration, **social interactions**, and management of her mood lability. (Ex. 7F, p. 63-67). **As such, the undersigned finds the opinions of the State agency consultative physicians and psychologists to be generally persuasive.**

(*Id.* at 36-37) (emphasis added).

The Court disagrees that occasional interaction (a quantitative limitation) accounts for a limitation to superficial interaction (a qualitative limitation). *See Walsh v. Colvin*, No. 3:15CV1708, 2016 WL 1752854, at *14 (N.D. Ohio May 3, 2016) ("Plaintiff argues, however, and the Court agrees, that the limitation to superficial interactions does not adequately address the state agency psychologists' specific limitation to 'work that does not involve frequent social interactions.'"). As this Court found in an analogous case:

> I agree that the ALJ was not required to adopt the state psychiatric consultants' opinions wholesale. *See, e.g.*, *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). But, "Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7 (July 2, 1996), cautions that an ALJ 'must always consider and address medical source opinions [and] [i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.'" *Holmes v. Saul*, No. 5:19-cv-2556, 2020 WL 6747750, at *8 (N.D. Ohio Oct. 26, 2020); *see also Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.").

15

Here, the ALJ's RFC assessment that Clampit was limited to only "occasional" contact conflicts with the state psychiatric consultants' opinions that he was limited to "occasional" *and* "superficial" contact. This is so because "[t]he terms 'occasional' and 'superficial' are not interchangeable." *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-cv-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) (citing *Hurley v. Berryhill*, No. 1:17-cv-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018)). "'Occasional contact' goes to the quantity of time spent with the individuals, whereas 'superficial contact' goes to the quality of the interactions." *Hurley*, 2018 WL 4214523, at *4 (further citation omitted).

By limiting Clampit to "occasional interaction" (a quantitative limitation), the ALJ did not account for the state psychiatric consultants' opinion that Clampit was also limited to "superficial" interaction (a qualitative limitation). *See, e.g.*, *Kearns v. Comm'r of Soc. Sec.*, No. 3:19CV01243, 2020 WL 2841707, at *12 (N.D. Ohio Feb. 3, 2020); *Corey v. Comm'r of Soc. Sec.*, No. 2:18-cv-1219, 2019 WL 3226945, at *4 (S.D. Ohio July 17, 2019). **While the ALJ was not required to adopt the "superficial"-interaction limitation, he was required to explain why he did not do so. Because he did not, remand is required.** *See, e.g. Gonzalez v. Colvin*, No. 1:13-CV-01358, 2014 WL 1333713, at *8 (N.D. Ohio Mar. 28, 2014) (remanding even though "[t]he Court agree[d] that there may be evidence in the record that Plaintiff may not be limited to only occasional superficial interactions" because "the ALJ should have analyzed and explained that evidence" and because "relying on other information in the record to explain why the ALJ ultimately omitted the limitation from Plaintiff's RFC would require this Court to engage in the *post hoc* rationalization that case law clearly prohibits."); *Corey*, 2019 WL 3226945, at *4; *Lindsey*, 2018 WL 6257432, at *4-*5.

*Clampit v. Comm'r of Social Sec.*, No. 3:20-CV-1014, 2021 WL 3174111, at *2 (N.D. Ohio July 26, 2021) (emphasis added). *Cf. Burley v. Comm'r of Soc. Sec.*, Case No. 4:23-cv-00218, 2024 WL 1297554, at *6 (N.D. Ohio Mar. 27, 2024) ("The Court declines to adopt our sister District's approach distinguishing superficial and occasional interaction.").[3]

The case at bar is even more compelling than the one in *Clampit*, as here the ALJ implicitly recognized the terms "superficial" and "occasional" are not interchangeable, as the ALJ limited Renfrow to

---

[3] The Court notes that *Burley* is factually distinguishable, as the RFC in that case limited the claimant to "no contact with the general public," "occasional contact with coworkers and supervisors," and "once work is assigned to Ms. Burley, the work should be able to be performed without working in close coordination with others and the tasks should require working with things rather than people." *Burley v. Comm'r of Social Sec.*, No. 4:23-CV-00218-BMB, 2023 WL 9604195, at *7 (N.D. Ohio Dec. 20, 2023), *report and recommendation adopted*, 2024 WL 1297554, at *1.

"occasional, superficial interactions with the general public and coworkers" but only "occasional interaction with supervisors." (Tr. 30.) And while the Commissioner offers an explanation for that determination, the ALJ did not include such an explanation in the decision; therefore, this constitutes impermissible *post-hoc* rationalization.

For all of the foregoing reasons, the Magistrate Judge recommends this matter be remanded for proper consideration and explanation of the mental limitations in the RFC. As the Magistrate Judge recommends remand on these grounds, in the interest of judicial economy, the Magistrate Judge does not reach Renfrow's other assignments of error.

## VII.   CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be VACATED AND REMANDED for further proceedings consistent with this opinion.

Date: December 18, 2024                           *s/ Jonathan Greenberg*
                                          Jonathan D. Greenberg
                                          United States Magistrate Judge

## **OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**